```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA

JAMES SULLIVAN, JR., ET AL                        CIVIL ACTION

VERSUS                                            NO: 06-4437

MONSANTO COMPANY, ET AL                           SECTION: B(4)
```

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment. (Rec. Doc. No. 160). Plaintiffs oppose this Motion. (Rec. Doc. No. 163). Plaintiffs' Motion for Summary Judgment. (Rec. Doc. No. 161). Defendants oppose this Motion. (Rec. Doc. No. 164).

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. No. 160) is hereby **GRANTED.** Plaintiffs' Motion for Summary Judgment (Rec. Doc. No. 161) is hereby **DENIED.**

The primary dispute among the parties is whether the benefit plan provided to the Plaintiffs and the class as a whole was properly amended and, if not, the accuracy of the benefits actually paid to the Plaintiffs and the class. The Plaintiffs are all retired employees of the former Monsanto Company who entered retirement between January 1, 1995 and December 31, 2000. Upon retirement, Plaintiffs became eligible to participate in a retiree health-care benefit plan, which was established in 1995 and entitled the "Monsanto Company Medical Benefits Plan for Salaried and Non-Union Hourly Retirees" ("1995 Plan"). The plan provided that both active and retired employees would contribute the same

amount for similar health coverage until the retirees reached a specific defined dollar limit ("DDL").  The DDL caps the amount of coverage provided under the health plan and renders retirees responsible for any medical costs exceeding the DDL.  Parity among active versus retired employee contributions only applied when retirees had not yet exceeded the DDL and were under age 65.

In 2000, the Monsanto Company merged with Pharmacia & Upjohn, Inc., to form Pharmacia Corporation.  Pharmacia retained responsibility for the retiree health care benefits of individuals who retired from the Monsanto Company/Pharmacia on and after January 1, 1995, until Pfizer acquired Pharmacia in 2003, and as the corporate successor to the prior benefit plan sponsors and administrators, Pfizer became the current sponsor and administrator of the benefit plan at issue.

In 2002, the 1995 Plan was amended.  The 2002 plan contained the same DDLs as the 1995 Plan, but eliminated the parity requirements that had previously applied to regulate active versus retired employee contributions towards the health plan. Plaintiffs allege that the 2002 amended plan resulted in increased healthcare costs in violation of ERISA, because Plaintiffs now make higher contributions towards their healthcare plan than active employees. Specifically, Plaintiffs claim that the 2002 amendment to the benefits plan was ineffective, and therefore the 1995 Plan's parity provision continued to apply to the calculation and determination

of the Plaintiffs' and other class members' health care costs. Defendants assert that the plan amendment was indeed valid, thereby effectively eliminating the parity provision.

Plaintiffs claim that they are entitled to summary judgment because (1) the 2002 Benefits Book (the amended plan) is a summary of material modifications to the 1995 Plan, not a summary plan description (SPD), and therefore it cannot serve as a plan document; and (2) the language of the 2002 Benefits Book under the section entitled "Official Documents Control" refers to the 1995 Plan, as it was the only official plan document in existence in 2002, and since the language in question is ambiguous, it must be construed against the drafter. Additionally, even if the amendment at issue is valid, it did not become effective until July 2002, and thus the 1995 Plan, with its parity provision, was in effect until that date.

Defendants assert that (1) the 2002 Benefits Book is indeed an SPD, and it served as the official plan document until formal plan documents were later prepared and adopted; and (2) the "Official Documents Control" language of the amended plan refers to future formal plan documents, not the 1995 Plan, it is unambiguous, and even in the event that it is construed as ambiguous, deference should be given to Defendants' interpretation considering the extrinsic evidence provided and Defendants' position as plan administrator. Moreover, if the amendment is deemed valid,

Defendants claim that Plaintiffs have not presented any proof that there were any overcharges prior to July 2002 to support their assertion that they would still have viable claims.

**A. Motion for Summary Judgment Standard**

When determining if summary judgment is appropriate, the court views evidence in the light most favorable to the non-moving party. *See Littlefeld v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. If the moving party does not meet its burden of showing an absence of genuine issue of material fact, the motion must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party moving for summary judgment manages to show the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). If only one conclusion can be reasonably inferred from such evidence, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). It has also been established that "the party opposing the motion for summary judgment bears the burden of responding only

after the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *See Celotex Corp.*, 477 U.S. at 322.

The Supreme Court states that:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.*

**B. Validity of the 2002 Plan Amendment**

*1. Classification of the 2002 Benefits Book*

Plaintiffs first claim that the 2002 Benefits Book, which purported to amend the 1995 Plan, was a summary of material modifications ("SMM"), rather than a summary plan description ("SPD"), and thus could not serve as an official plan document (Rec. Doc. No. 161-1 at 8).

Under ERISA, an SPD is defined as a summary of plan terms that must be provided periodically to plan participants, and it can also serve as the official plan document.[1] 29 C.F.R. 2520.104b-2(a). An SMM is a document that describes any material changes that have been made to the applicable plan, and must also be distributed periodically to plan participants. 29 C.F.R. 2520.104b-3(a). The

---

[1] It is undisputed that an SPD can serve as both the summary and the official plan document.

Sixth Circuit has explained that the purpose of an SMM is to prevent the burden on the plan administrator of immediately updating and republishing the SPD after a company validly amends a plan, as long as an updated SPD is provided to participants every five years. *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 428 (6th Cir. 2007). If an employer does not create a new SPD after a plan has been amended, the SMMs must be distributed together with the SPD. 29 U.S.C. § 1024(b)(1).

Plaintiffs assert that the 2002 Benefits Book was an SMM that summarized changes to the official plan document, the 1995 Plan, and thus could not serve as the official plan document. (Rec. Doc. No. 161-1 at 9). However, the document to which Plaintiffs refer as support of their assertion is a copy of the 2002 Benefits Book that was created in May 2002 and adopted by the Plan Committee in July 2002, together with two SMMs made subsequently to it included at the document's forefront. (Rec. Doc. No. 161, Ex. D). Plaintiffs cite to one of the SMMs as confirmation that the entire 2002 Benefits Book was an SMM (Rec. Doc. No. 161-1 at 3), yet the cited document clearly states that it is "a summary of material modifications made to the May 2002 Summary Plan Description (SPD) for the Medical and Life Insurance Benefits for Former Employees of the Monsanto Company ('Plan')." (Rec. Doc. No. 161, Ex. D at PFIZER ERISA 214.) The cited SMM additionally states that "[a]ll references in this document are to the May 2002 SPD. You must read

6

this document with the SPD for full details of the plan." *Id.* Moreover, the copy of the 2002 Benefits Book provided in the Exhibit expressly refers to itself as an SPD, specifically stating "[y]ou are eligible to participate in the Retiree Medical Plan described in this summary plan description (SPD) if you meet the following...." (Rec. Doc. No. 161, Ex. D at PFIZER ERISA 223.)

As Plaintiffs own attached document shows that the 2002 Benefits Book was indeed an SPD, this contention has no merit.

*2. The "Official Documents Control" Section*

The "Official Documents Control" section of the 2002 Benefits Book contains the following language:

> Please remember that this Benefits Book is only a summary of certain Pharmacia benefit plans and policies and is not meant to alter any plan or legal instrument related to the plans' or policies' creation, operation, funding or benefit payment obligations. If there is any conflict or inconsistency between this document and the official written documents, the official documents control.

Rec. Doc. No. 161, Ex. D at PFIZER ERISA 290.

The parties are in dispute over the interpretation of this section, specifically the "official documents" to which it refers. Plaintiffs assert that assuming the Benefits Book is an SPD, this section refers to documents already in existence, i.e. the 1995 Plan. (Rec. Doc. No. 163 at 7). Defendants argue that the plans referred to were future formal plan documents that the Committee intended to prepare and adopt, but never did, as the acquisition by Pfizer diverted their attention. (Rec. Doc. No. 160-1 at 10-11).

Plaintiffs then assert that because the language is ambiguous, the rule of *contra proferentum* applies, which means that ambiguities must be resolved against the drafter of the document. (Rec. Doc. No. 161-1 at 14). Defendants first respond that the language is not ambiguous; as the 2002 Benefits Book was intended to replace the 1995 Plan, the "official written documents" could not refer to the 1995 plan, but instead had to refer only to written plan documents that remained in existence after the adoption of the Benefits Book. (Rec. Doc. No. 164 at 8). Furthermore, since formal plan documents did not exist, the only official plan document was the Benefits Book, and thus no conflict or inconsistency could exist. (Rec. Doc. No. 164 at 8-9).

Defendants' explanation itself shows ambiguity in the language. Since there is no clear indication in the 2002 Benefits Book that future plans, policies, or documents were to be drafted, it is unclear which potential conflicts or inconsistencies the section was meant to address. As Defendants argue, no conflict or inconsistency could exist without additional documents, and thus the language of the section is ambiguous as to its purpose and effect. As a result, certain principles governing interpretation of ambiguity in ERISA plans must be considered.

Plaintiffs cite *Wegner v. Standard Ins. Co.,* 129 F.3d 814 (5th Cir. 1997), in support of their claim that when language in ERISA plans is ambiguous, the Fifth Circuit follows the rule of *contra*

*proferentum*, which means that ambiguities must be resolved against the drafter of the document. (Rec. Doc. No. 161-1 at 14). However, *Wegner* expressly states that "[o]nly if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." 129 F.3d at 818 (citing *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451 (5th Cir. 1995); *Jones v. Georgia Pacific Corp.*, 90 F.3d 114, 116 (5th Cir. 1996)). As Defendants assert, one of the ordinary principles of contract interpretation is that instruments are interpreted in light of all of the circumstances and other evidence of the parties' intent. *U.S. Life Ins. Co. v. Stein*, 2000 WL 1182618, at *6 (E.D. La. 2000) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112-13 (1989)). Therefore, the Court "is not precluded from considering evidence outside the SPD in interpreting that document or the Plan." *U.S. Life Ins. Co. v. Stein*, 2000 WL 1182618, at *6 (E.D. La. 2000).

Defendants have shown through the deposition testimony of then-Committee Chairman Ron Cheeley that the paragraph in question is referring to plans that would be created subsequent to the adoption of the 2002 Benefits Book as the SPD. (Rec. Doc. No. 160, Ex. A, Cheeley Dep. at 21:17-25; 22:1-18; 23:1-21). Cheeley specifically states:

> As I recall looking at the minutes and the recollection of being there, we made a decision to create the summary

>     plan description in the interest of clear communications
>     to our employees in advance of actually creating the plan
>     document.  So this SPD served as a plan document until
>     such time as we were able to create a formal plan
>     document, and that is what this paragraph is referring
>     to.

*Id.* At 22:6-13.

Cheeley's deposition testimony is additionally supported by the Committee minutes, which expressly declare that the 2002 Benefits Book was adopted as the official plan document, as well as materials concerning the July 12, 2002 meeting, which indicate that formal plan documents were in fact intended to be prepared and adopted in the future. (Rec. Doc. No. 160, Ex. I, July 12, 2002 Minutes, at PFIZER ERISA 503-04; Ex. K, Committee Proposal, at PFIZER ERISA 505-08.)

    Plaintiffs, on the other hand, rely only on case law in arguing that the Court must resolve the ambiguity in favor of their interpretation that the provision at issue refers to the 1995 Plan. Plaintiffs cite to decisions holding that any inconsistencies between an SPD and the actual plan must be governed by the SPD (Rec. Doc. No. 161-1, at 14-15), but such holdings have no bearing on the intent of Defendants in drafting and adopting the SPD at issue. Additionally, Plaintiffs state that the doctrine of *contra proferentum* requires the ambiguous language to be construed in their favor. However, Defendants have shown clear extrinsic evidence in support of their interpretation of the meaning of the ambiguous language, thereby preventing application of the doctrine.

Additionally, deference should be given to Defendants' interpretation of the language at issue as the 2002 Benefits Book explicitly states that the plan administrator "has the sole discretionary authority to construe the provisions of the plans, [and] to resolve ambiguities[.]" (Rec. Doc. No. 160, Ex. C-2, at PFIZER ERISA 288). When the plan administrator is given such authority, if any ambiguity exists, the plan administrator is empowered to resolve it, rather than resorting to the doctrine of *contra proferentum*. *High v. E-Systems Inc.*, 459 F.3d 573, 578-79 (5th Cir. 2006). Moreover, the administrator's interpretation must be upheld unless it is found to be an abuse of discretion.[2] *High*, 459 F.3d at 577 (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999)); *Holland*, 576 F.3d at 246. An abuse of discretion exists when the plan administrator acts arbitrarily or capriciously, by making a decision without a rational connection between the facts and the decision or the facts and the evidence. *Holland*, 576 F.3d at 246-47 (citing *Meditrust*, 168 F.3d at 214-15).

As set forth above, Defendants' interpretation of the language

---

[2]Determinations made by a plan administrator given discretionary authority to construe the plan's terms may be subject to a two-step analysis – first considering whether the decision is legally correct and if not, reviewing whether the interpretation was an abuse of discretion. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009); *High*, 459 F.3d at 577; *Duhon v. Texaco*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994). Nevertheless, it is well-settled 5th Circuit precedent that the first step may be skipped if it can be readily determined that there is no abuse of discretion. *Holland v. International Paper Co. Ret. Plan,* 576 F.3d 240, 246 n.2 (5th Cir. 2009); *High*, 459 F.3d at 577; *Duhon*, 15 F.3d at 1307 n.2; *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602-03 (5th Cir. 2003).

of the 2002 Benefits Book is supported by the deposition testimony of then-Committee Chairman Cheeley, as well as the minutes and materials of the July 12, 2002 meeting at which the Benefits Book was adopted. As a rational connection exists between the plan administrator's determination and the facts and evidence presented, Defendants' interpretation must be upheld.

*3. Plaintiffs' Claims of Overcharge Prior to July 12, 2002*

Plaintiffs' final assertion is that assuming the 2002 Benefits Book effectively became the official plan document on July 12, 2002, Plaintiffs still have viable claims for overcharges that occurred up until that date, as the 1995 Plan, and the parity requirement included therein, necessarily applied. (Rec. Doc. No. 161-1 at 15-16). Plaintiffs offer then-Committee Chairman Cheeley's deposition testimony as support for their assertion. Cheeley's testimony clearly states that the Benefits Book could not have been effective before the July 12, 2002 meeting at which it was adopted, its application would have been prospective, not retroactive, and the 1995 Plan would have governed up until that meeting date. (Rec. Doc. No. 161, Ex. F, at 20-21).

Defendants do not dispute the effective date of the 2002 Benefits Book; instead, Defendants respond that Plaintiffs have set forth only conclusory allegations of overcharges prior to July 2002. (Rec. Doc. No. 164, at 13). Moreover, Defendants point to the depositions of all seven of the Plaintiffs, in which each state

12

that they do not believe that they were overcharged at any time before 2005, clearly after the July 12, 2002 adoption of the Benefits Book as the official plan document.  (Rec. Doc. No. 164, at 13, citing to Rec. Doc. No. 139, Exs. A-F; Rec. Doc. No. 143, Ex. K).

It is well settled that plaintiffs cannot defeat summary judgment by attempting to negate the effect of their own sworn statements.  *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991).  Indeed, plaintiffs do not offer any specific proof of overcharges before July 2002, but only refer to a statement of this Court in its Order ruling on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Rec. Doc. No. 100), which stated:

> Even if assuming the 2002 amendment was valid, Plaintiffs' claims regarding the impermissible contribution increases encompass more than a year and a half of increases made before any amendment to the 1995 Plan was even attempted.

(Rec. Doc. No. 100).  However, in ruling on Defendants' Motion to Dismiss, this statement was made based only on the allegations included in Plaintiffs' Complaint.  As Plaintiffs have offered no specific facts indicating that there were any overcharges prior to July 2002, particularly in light of their deposition testimony suggesting the opposite, summary judgment is appropriate here.

Accordingly, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. No. 160) is **GRANTED,** and Plaintiffs' Motion for

13

Summary Judgment (Rec. Doc. No. 161) is **DENIED.**

New Orleans, Louisiana, this 10th day of November, 2010.

_____
United States District Judge